**STATE OF NORTH CAROLINA**

**COUNTY OF MOORE**

**IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO.**

25CV001930-620

| | |
|---|---|
| HEATHER AMMEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| KYRSTEN SINEMA, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**VERIFIED
COMPLAINT
(Jury Trial Demanded)**

**COMES NOW** Plaintiff, Heather Ammel, by and through her undersigned counsel, and complaining of Defendant, Kyrsten Sinema, hereby alleges and states as follows:

## PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff is a citizen and resident of Moore County, North Carolina and has been for more than six months preceding the filing of this action.

2.    Defendant is a citizen and resident of Cave Creek, Arizona.

3.    The Superior Court of Moore County has both personal and subject-matter jurisdiction over the parties and the claims set forth in this Complaint.

4.    Venue is proper in Moore County, North Carolina pursuant to N.C. Gen. Stat. § 1-82.

## PREDICATE FACTS

5.    Plaintiff hereby realleges and incorporates by reference paragraphs 1-4 of this Complaint as if fully set forth herein.

EXHIBIT
**2**

Electronically Filed Date: 9/30/2025 9:56 AM  Moore Superior Court County Clerk of Superior Court

6.     Plaintiff married her husband, Matthew Ammel (hereinafter "Mr. Ammel"), on 23 October 2010 (hereinafter, "the Marriage"). Plaintiff and Mr. Ammel separated on 1 November 2024 (hereinafter, "the Separation").

7.     During the Marriage, Plaintiff and Mr. Ammel had three children: C.A., born 4 October 2011; I.A., born 3 January 2013; and J.A., born 29 September 2015 (hereinafter "the Children").

8.     Mr. Ammel was a member of the United States Army. Prior to moving to Moore County in 2014, Plaintiff and Mr. Ammel lived in Raeford, North Carolina. Over the course of four years, Mr. Ammel deployed on four separate occasions to Afghanistan and to the Middle East. During this period, Plaintiff and Mr. Ammel had their two children, C.A. and I.A..

9.     From 2014 until 2024, the Ammel family resided together in Moore County, North Carolina.

10.     On 29 September 2015, while residing together in Moore County, Plaintiff and Mr. Ammel had their third child, J.A.

11.     Throughout the Marriage, Plaintiff was a dutiful spouse and mother and provided a comfortable and loving home and environment for Mr. Ammel. Plaintiff supported Mr. Ammel's career, caring for the Children and household as Mr. Ammel had a demanding schedule with the Army between deployments and military trainings when he was stateside.

12.     Specifically, throughout the Marriage, Plaintiff was the primary homemaker, taking care of all basic needs of the Children, including but not limited to: (a) waking, dressing, grooming, feeding, and preparing the Children for daily activities; (b) waking up at night to care for the Children's nighttime needs; (c) preparing breakfast, lunch, and dinner for both Mr. Ammel and the Children on a daily basis; (d) transporting the Children to and from school, activities, and social

functions; (e) facilitating and participating in after-school activities, weekend activities, and social engagements for the Children; (f) facilitating, hosting, and participating in social engagements for Mr. Ammel; (g) cleaning the household on a daily basis; (h) doing laundry for both Mr. Ammel and the Children on a daily basis; (i) completing basic repairs and maintenance in the household; (j) caring for the Children and Mr. Ammel when they were ill; (k) facilitating family routines, traditions, and activities; and (l) caring for family pets.

13.     Plaintiff and Mr. Ammel had an active, generous, and fulfilling sexual relationship and remained emotionally and physically intimate throughout the Marriage.

14.     Prior to Defendant's intentional and malicious interference, Plaintiff and Mr. Ammel had a good and loving marriage, and genuine love and affection existed between them.

15.     Due to the stress and responsibilities associated with his job in the military, Mr. Ammel suffers from substance abuse, post-traumatic stress disorder, and traumatic brain injuries (TBI). Plaintiff ensured Mr. Ammel received proper treatment and care, including taking him to substance-abuse appointments and facilitating his enrollment in various treatment programs.

16.     In 2020, Mr. Ammel separated from the Army. Shortly thereafter, Mr. Ammel and his friend, Mike DeVault, started a tree removal company based in Tennessee. Plaintiff and Mr. Ammel made plans to move to Nashville, Tennessee, but in 2021, Mr. Ammel stopped taking his prescription medications, began to rely heavily on marijuana, and was emotionally unstable. As a result, Plaintiff and Mr. Ammel decided to stay in North Carolina for the time being.

17.     In 2022, Mr. Ammel officially retired from the Army. Plaintiff and Mr. Ammel initially experienced difficulty obtaining Mr. Ammel's retirement pay and went through an extensive process to secure his retirement.

18.     Plaintiff maintained the household while Mr. Ammel searched for stable employment and focused on improving his mental and physical health.

19.     In 2022, Mr. Ammel secured employment in a few different jobs. Ridgeline Defense hired Mr. Ammel as a shooting, driving, and breaching instructor. Consolidated Analysis Centers, Inc. ("CACI") hired Mr. Ammel as a maritime operations instructor in Tunisia. Staccato, a nationally recognized firearm company, hired Mr. Ammel to train law enforcement on how to use their pistols.

20.     That same year, in 2022, Defendant's head of security hired Mr. Ammel to work as a security detail for Defendant.

21.     At that time, Defendant was serving as a United States Senator for the State of Arizona.

22.     In April 2022, Mr. Ammel began working for Defendant.

23.     In the fall of 2023, Defendant's head of security resigned from her position. Prior to leaving, Defendant's head of security expressed to Mr. Ammel she had concerns Defendant was having sexual relations with other security members. She encouraged Mr. Ammel to leave with her, but Mr. Ammel decided to stay due to the financial security of the job.

24.     In addition to accompanying Defendant to various work events, Mr. Ammel accompanied Defendant on several trips and went with her alone to Napa Valley, California in the fall of 2023. Upon returning home from Napa Valley, Mr. Ammel appeared uncomfortable and informed Plaintiff that if anyone had seen them together on the trip, it would have appeared as if they were on a romantic getaway.

25.     In December of 2023, Defendant requested Mr. Ammel serve as her security for the U2 concert at the Sphere in Las Vegas, Nevada. Mr. Ammel asked Plaintiff to accompany him on

the trip and presented it to her as a "gift." Mr. Ammel expressed that the trip would be a great opportunity for Plaintiff to meet Defendant and would help establish boundaries. Mr. Ammel introduced Plaintiff to Defendant as his wife. Plaintiff met Defendant, Defendant's friends, and several others on the trip, including American diplomat and Executive Director of the World Food Programme, Cindy McCain. After the concert was over, the group went to McCain's suite. Defendant offered Plaintiff a glass of Dom Perignon and stated to Plaintiff "Did you ever think you would be drinking Dom Perignon in Cindy McCain's Suite?"

26. In or around 2023, Defendant traveled to Charlotte, North Carolina, for a work event. Mr. Ammel met Defendant at the airport and provided her security for the event.

27. Beginning in January 2024, while Plaintiff, Mr. Ammel, and the Children were residing in Moore County, North Carolina, Plaintiff discovered Defendant frequently messaging Mr. Ammel on Signal, the messaging app. Defendant had knowledge Mr. Ammel was residing in North Carolina at the time she sent the messages, and Mr. Ammel received the messages while residing at the marital residence in Moore County, North Carolina. The messages exceeded the bounds of a normal working relationship and were of romantic and lascivious natures.

28. Plaintiff discovered messages which included a picture of Defendant wrapped in a towel; Defendant offered to help Mr. Ammel work through his mental health challenges and Mr. Ammel agreed; Mr. Ammel stated to Defendant he was intimidated by her and Defendant asked why because she only wants to be intimidating to her opponents, not to people she likes; Defendant suggested for Mr. Ammel to bring MDMA drugs on a work trip so that she could guide him through a psychedelic experience.

29.     Defendant messaged Mr. Ammel during the State of the Union Address, and when Mr. Ammel asked why she wasn't attending the State of the Union that year, Defendant stated she didn't need to listen to some old man, President Biden, talk about the legislation that she wrote.

30.     Around that same time, Mr. Ammel traveled to Pennsylvania for a work trip with Staccato. During his free time, Mr. Ammel attended a baseball game by himself, but messaged Defendant during the game stating he was going to start a "fuck the troops" chant. Defendant responded stating she would "fuck the hot ones."

31.     Defendant and Mr. Ammel messaged about having sex missionary style with the lights on, and Defendant stated "Boring!"

32.     In March 2024, Defendant requested Mr. Ammel serve as her security at the Extra Innings Festival in Phoenix, Arizona. Mr. Ammel acknowledged to Plaintiff that Defendant was handsy with him at this event. Defendant held his hand and touched him. Mr. Ammel expressed to Plaintiff he didn't know how to get out of the situation without offending Defendant.

33.     Shortly thereafter, Defendant and Mr. Ammel flew to San Francisco, California, for Defendant's work trip. While in San Francisco, Defendant invited Mr. Ammel into her hotel room, and they stayed together for hours.

34.     In April 2024, Mr. Ammel traveled to Maryland for a work trip with Staccato. While he was there, Defendant invited Mr. Ammel over to her apartment in Washington, DC.

35.     In May 2024, Defendant started purchasing gifts for Mr. Ammel and paid for him to receive psychedelic treatment. Defendant paid for Mr. Ammel's psychedelic treatment appointment in Nashville, Tennessee, and then flew him to Napa Valley, California, for him to provide Defendant's security at a concert. After the concert, Defendant, Defendant's friends, and Mr. Ammel stayed in a private Airbnb together.

36.     Defendant purchased a theragun for Mr. Ammel and messaged him to bring it over to her apartment so that she could "work on his back."

37.     Around May or June 2024, Mr. Ammel stopped wearing his wedding ring. Mr. Ammel stated it was best for "public optics" so it wouldn't look like Defendant was putting her hands on a married man when they were out at concerts and various other public events.

38.     In June 2024, Defendant requested Mr. Ammel travel to New York City to be her security and guest for a wedding. From New York City, Defendant and Mr. Ammel flew to Defendant's house in Scottsdale, Arizona where they stayed together alone.

39.     That same month, Defendant offered Mr. Ammel a salary position and placed him on her senate staff as a Defense and National Security Fellow. Mr. Ammel then worked as Defendant's personal security guard as well as her senate staff member.

40.     Around that same time, Plaintiff discovered more messages between Defendant and Mr. Ammel. Defendant expressed to Mr. Ammel she keeps waking up during her sleep and reaching over for his arms to hold her. Plaintiff confronted Mr. Ammel.

41.     In the following months, Mr. Ammel struggled to admit to Plaintiff he was having an affair with Defendant but was vocal that he was leaving Plaintiff and that they were divorcing.

42.     Mr. Ammel continued to work for Defendant as her security guard and senate staff member, traveling to various states and cities within the United States and internationally.

43.     In July 2024, Mr. Ammel took their minor child, C.A., to Washington, D.C. for a work trip. Mr. Ammel and C.A. attended the Green Day concert with Defendant, and Defendant provided C.A. a tour of the United States Capitol.

44.     In October 2024, soon after Mr. Ammel returned home to Moore County, North Carolina, after being away with Defendant on another work trip, Defendant messaged Mr. Ammel

stating, "I miss you. Putting my hand on your heart. I'll see you soon." Plaintiff responded to the message stating, "are you having an affair with my husband? You took a married man away from his family."

45.    That same month, Mr. Ammel went as Defendant's guest to the Taylor Swift concert in Miami, Florida. Months prior to the concert, Mr. Ammel arranged for Plaintiff and the Children to also attend. Plaintiff attended to the concert out of concern for the Children. After the concert was over, Plaintiff and the Children flew home to Moore County, North Carolina. Mr. Ammel stayed behind to travel with Defendant to Las Vegas, Nevada for work.

46.    After returning home from Las Vegas, Nevada, Mr. Ammel insisted he and Plaintiff go together on an anniversary trip to Nashville, Tennessee. After the anniversary trip concluded, Plaintiff returned home to Moore County, North Carolina, and Mr. Ammel went on a work trip with Defendant to Saudi Arabia.

47.    Shortly after Mr. Ammel returned home to Moore County, North Carolina from Saudi Arabia, on 1 November 2024, Plaintiff and Mr. Ammel separated, and Mr. Ammel moved out of the marital residence.

48.    Prior to Defendant's deliberate interference in the Marriage, genuine love and affection existed between Plaintiff and Mr. Ammel.

49.    Defendant knew Mr. Ammel was married to Plaintiff and that they resided together with their Children in Moore County, North Carolina.

50.    Beginning in or prior to 2023, Defendant, with actual knowledge of the Marriage between Plaintiff and Mr. Ammel, began to willfully and intentionally seduce, entice, and alienate the affections of Mr. Ammel, and began to wrongfully and maliciously deprive Plaintiff of the

warmth, companionship, love, affection, consortium, society, financial contributions, services, and attention of Mr. Ammel.

51. Defendant initiated the affair with Mr. Ammel while Plaintiff and Mr. Ammel were domiciled in Moore County, North Carolina.

52. Specifically, during the Marriage and prior to Plaintiff and Mr. Ammel's Separation, Defendant engaged in numerous unlawful acts with Mr. Ammel both within and outside the State of North Carolina while Plaintiff and Mr. Ammel were domiciled in Moore County, North Carolina. Upon information and belief, such unlawful acts included, but were not limited to:

      a. Initiating and engaging in numerous, lengthy communications with Mr. Ammel, including: (i) in-person conversations; (ii) telephone conversations; (iii) text message conversations; and (iv) app-based (i.e. Signal) conversations, some of which were emotionally romantic and/or sexual in nature;

      b. Meeting with Mr. Ammel on a regular and consistent basis outside the professional environment, with some of such meetings being emotionally and/or physically romantic and/or sexual in nature;

      c. Encouraging Mr. Ammel to leave Plaintiff; and

      d. Having repeated physically romantic and/or sexual encounters with Mr. Ammel, including but not limited to repeated episodes of sexual intercourse.

53. Defendant solicited Mr. Ammel during the Marriage while Plaintiff and Mr. Ammel were domiciled and present in North Carolina and Defendant was located outside of North Carolina. Defendant effected the solicitation by using telephonic and internet communications of lascivious natures.

54. While legitimate business communication occurred between Defendant and Mr. Ammel during their time as professional colleagues, Defendant's communications to Mr. Ammel became more frequent than required of coworkers and went beyond mere professional

correspondence. Such communications were of romantic and lascivious natures, as referenced above, and did in fact alienate the affections of Mr. Ammel from Plaintiff while both Plaintiff and Mr. Ammel were residing in North Carolina.

55.     Many of the communications referenced in paragraphs 52, 53, and 54 above, occurred while Mr. Ammel was in the marital residence in Moore County, North Carolina with Plaintiff and the Children.

56.     Defendant had actual knowledge Mr. Ammel was physically located and present in North Carolina with Plaintiff and the Children at the time Defendant sent the messages to Mr. Ammel and the messages were received by Mr. Ammel.

57.     Defendant repeated telephone calls and repeatedly sent messages to Mr. Ammel knowing he was located in North Carolina with Plaintiff and the Children.

58.     Defendant could and should have known that through eliciting communication—texts and phone calls—with Mr. Ammel, she was establishing a connection with the State of North Carolina.

59.     As a direct and proximate result of Defendant's intentional and wrongful actions: (a) Plaintiff and Mr. Ammel separated on 1 November 2024; (b) the genuine love and affection between Plaintiff and Mr. Ammel was lost and destroyed; (c) the Marriage was destroyed and Plaintiff suffered severe emotional pain, distress, embarrassment, mental anguish, loss of social position, disgrace, and humiliation; (d) upon discovering the unlawful affair, Plaintiff was distressed, unable to sleep, suffered a loss in general health and well-being, and suffered from depression and anxiety; (e) due to the negative impact of the unlawful affair on the Children, Plaintiff was distressed, unable to sleep, suffered a loss in general health and well-being, and suffered from depression and anxiety; (f) Plaintiff suffered financial hardship, as Mr. Ammel was

the sole source of income for the Ammel family—Plaintiff and the Children—supporting all of their daily needs; (g) Plaintiff was forced to pursue claims related to the Separation, a subsequent divorce, and the distribution of marital property in order to obtain her equitable share of the marital estate, forcing Plaintiff to incur substantial attorneys' fees, costs, and expenses; and (h) Plaintiff has been forced to incur additional attorneys' fees and litigation costs related to this action.

60.     North Carolina has an interest in this case because Mr. Ammel's affection for Plaintiff was alienated and destroyed while Plaintiff and Mr. Ammel were domiciled and present in North Carolina. Moreover, evidence and witness testimony are available in this State through Defendant and Mr. Ammel's past coworkers.

61.     Defendant could and should reasonably anticipate being haled into court in North Carolina because Defendant has undertaken action to purposefully avail herself of the privilege of conducting activities within the forum State. Defendant intentionally solicited the affections of Mr. Ammel while Plaintiff and Mr. Ammel were married and domiciled in Moore County, North Carolina, and Defendant knew or had reason to know Mr. Ammel was in North Carolina at the time she elicited communication with him.

62.     Defendant remains engaged in a romantic and sexual relationship with Mr. Ammel.

63.     Defendant frequently travels to North Carolina to visit Mr. Ammel.

64.     On 18 August 2025, Defendant drove to Plaintiff and Mr. Ammel's custody and equitable distribution mediation at Van Camp, Meacham & Newman, PLLC in Pinehurst, North Carolina. Defendant sat outside in the parking lot and waited for Mr. Ammel.

65.     On the weekend of 12 September 2025, Defendant and Mr. Ammel took the minor child, J.A., to a concert in Kentucky. On Sunday, 14 September, Defendant and Mr. Ammel drove

J.A. back through the night to Moore County, North Carolina. Defendant and Mr. Ammel dropped J.A. off at school at 9:00 a.m. Monday morning.

66. On 16 September 2025, Defendant accompanied Mr. Ammel to the marital residence to pick up the remainder of his belongings. Defendant sat outside in the cul-de-sac immediately adjacent to the marital residence.

67. As a direct and proximate result of Defendant's actions, Plaintiff suffered damages in excess of twenty-five thousand dollars ($25,000.00).

## FIRST CLAIM FOR RELIEF
*Alienation of Affection*

68. Plaintiff hereby realleges and incorporates by reference paragraphs 1-67 of this Complaint as if fully set forth herein.

69. Prior to Defendant's actions, Plaintiff and Mr. Ammel were happily married and genuine love and affection existed between them.

70. As a direct and proximate result of Defendant's intentional and unlawful actions, such marital love and affection was alienated and destroyed.

71. As a direct and proximate result of Defendant's intentional and unlawful actions, Plaintiff suffered loss of support and income, injury to her physical, mental, and emotional health and welfare, private and public humiliation, and has incurred costs, expenses, and attorneys' fees in connection with the Separation.

72. As a direct and proximate result of Defendant's actions, Plaintiff suffered damages in excess of twenty-five thousand dollars ($25,000.00).

73.     The actions of Defendant in alienating the affections of Mr. Ammel were willful, wanton, intentional, malicious, and in reckless disregard of Plaintiff's marital rights, and entitle Plaintiff to an award of punitive damages in excess of twenty-five thousand dollars ($25,000.00).

## SECOND CLAIM FOR RELIEF
*Punitive Damages*

74.     Plaintiff hereby realleges and incorporates by reference paragraphs 1-73 of this Complaint as if fully set forth herein.

75.     Upon information and belief, Defendant's actions in alienating the affections of Mr. Ammel were willful, wanton, intentional, malicious, and in reckless disregard of Plaintiff's marital rights, including but not limited to engaging in the following actions, both within and outside of North Carolina:

    a. Initiating and engaging in numerous, lengthy communications with Mr. Ammel, including: (i) in-person conversations; (ii) telephone conversations; (iii) text message conversations; and (iv) app-based (i.e. Signal) conversations, some of which were emotionally romantic or sexual in nature;

    b. Meeting with Mr. Ammel on a regular and consistent basis outside the professional environment, with some of such meetings being emotionally or physically romantic or sexual in nature;

    c. Encouraging Mr. Ammel to leave Plaintiff; and

    d. Having repeated physically romantic or sexual encounters with Mr. Ammel, including but not limited to repeated episodes of sexual intercourse.

76.     Defendant knew or should have known that her willful and wanton conduct was reasonably likely to cause injury, damage, and/or other harm to Plaintiff, and did in fact cause such harm to Plaintiff.

77.     An award of punitive damages is warranted to punish Defendant's willful and wanton conduct and to deter Defendant and others from engaging in similar conduct.

78. Plaintiff is entitled to recover damages in excess of twenty-five thousand dollars ($25,000.00), for injuries proximately caused by Defendant's willful and wanton conduct.

**WHEREFORE**, Plaintiff respectfully requests this Court as follows:

1. That Plaintiff may have and recover compensatory damages in excess of twenty-five thousand dollars ($25,000.00) for Defendant's Alienation of Affection;

2. That plaintiff may have and recover punitive damages for Defendant's willful and wanton conduct;

3. That all costs and reasonable attorneys' fees related to this action be taxed against Defendant;

4. For pre-and post-judgment interest;

5. For a trial by jury on all issues so triable; and

6. For such other and further relief as this Court deems just and proper.

This, the ___30___ day of September 2025.

VAN CAMP, MEACHAM & NEWMAN, PLLC
*Attorneys for Plaintiff*

BY: _____
Thomas M. Van Camp, N.C. State Bar No. 16872
Mary Catherine Coltrane, N.C. State Bar No. 60820
Post Office Box 1389
Pinehurst, North Carolina 28370
Telephone: (910) 295-2525
Facsimile : (910) 295-5101
thomasv@vancamplaw.com
marycatherine@vancamplaw.com

Page **14** of **14**

STATE OF NORTH CAROLINA )
                                        )                    **VERIFICATION**
COUNTY OF MOORE              )


I, **Heather Ammel**, after first being duly sworn, depose and say:

I have reviewed the foregoing **COMPLAINT**, that the information contained therein is true and correct. With regard to any information stated therein upon information and belief, I believe it to be true as well.

This, the 30 day of September 2025.


_Heather Ammel_
**Heather Ammel**


Sworn to and subscribed before me this day by **Heather Ammel**.


_____ I have personal knowledge of the identity of the principal(s).
___✓___ I have seen satisfactory evidence of the principal's identity, by a current state or federal identification with the principal's photograph in the form of a _driver's license_
_____ A credible witness has sworn to the identity of the principal(s).

Date: _5-30-2025_

_Larisa Fitch_
Notary Public

_Larisa Fitch_
Printed or typed name of Notary Public

My commission expires: _10-30-2026_

(Official Seal)

NORTH CAROLINA

MOORE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO: 25CV001930-620

*Heather Ammel*
  Plaintiff

v.

*Kyrsten Sinema*
  Defendant

)
)
)
)
)
)
)

*Acceptance of Service*

Effective 3 November 2025, I, Marcia H. Armstrong as the attorney for and as authorized by defendant Kyrsten Sinema accept service of the Summons and Complaint, and written discovery (Plaintiff's First Requests for Admissions, First Set of Interrogatories and First Requests for Production of Documents). Defendant stipulates that process and service of process are valid and effective. Otherwise, defendant reserves all other defenses as may be appropriate under Rule 12 NCRCP or otherwise, including but not limited to personal and subject matter jurisdiction.

Marcia H. Armstrong
Attorney for Defendant

This the 3rd day of November 2025

*Certificate of Service*

I /s/ Marcia H. Armstrong certify that on 3 November 2025 I served this Acceptance of Service by email on Plaintiff's attorneys, Thomas Van Camp, to thomasv@vancamplaw.com and Mary Catherine Coltrane to marycatherine@vancamplaw.com.

NORTH CAROLINA

MOORE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO: 25CV001930-620

*Heather Ammel*
    Plaintiff

v.

*Kyrsten Sinema*
    Defendant

)
)
)
)
)
)
)
)

*Motion for Protective Order*

Pursuant to Rule 26(c) NCRCP, Kyrsten Sinema (Defendant) objects to Plaintiff's First Interrogatories, Request for Production of Documents, and Request for Admissions served on Defendants (Plaintiff's Discovery), and moves for a protective order. In support of this Motion, Defendant shows the Court that:

    1.    On 30 September 2025, Plaintiff filed her complaint.

    2.    On 3 November 2025, Defendant through counsel accepted service of the issued summons and complaint and Plaintiff's Discovery.

    3.    Plaintiff's Discovery (Exhibit 1) is incorporated by reference.

    4.    Contemporaneous with this Motion, Defendant filed a Rule 12(b)(2) motion to dismiss the complaint ("Motion to Dismiss"). The Motion to Dismiss and supporting materials are incorporated.

    5.    The Motion to Dismiss asserts that North Carolina's exercise of jurisdiction over Defendant violates her due process rights under the Fourteenth Amendment to the United States Constitution.

    6.    Compelling Defendant to respond to Plaintiff's Discovery would be appropriate only if this Court had personal jurisdiction and the power to force Defendant to engage in discovery and participate in this litigation, all of which is emphatically contested in the Motion to Dismiss.

    7.    If the Motion to Dismiss is granted (and affirmed after exhaustion of appeals), the case will be dismissed and Plaintiff's Discovery is moot.

8. Defendant is entitled to resolve her Motion to Dismiss prior to being compelled to respond to Plaintiff's Discovery.

9. Defendant does not waive and in fact preserves all specific objections to confidential, sensitive personal information, such as extensive bank and credit card records, which Defendant will assert if after exhaustion of appeals she must respond to Plaintiff's Discovery.

Wherefore, pursuant to Rule 26(c) NCRCP, Defendant objects to the entirety of Plaintiff's Discovery and moves for a Protective Order preventing discovery that would violate Defendant's constitutional rights unless and until Defendant's Motion to Dismiss is denied (after exhaustion of appeals) and this Court has personal jurisdiction to compel Defendant to participate in this litigation and respond to Plaintiff's Discovery.

THE ARMSTRONG LAW FIRM, P.A.

BY: */s/ Lamar Armstrong, Jr.*
L. Lamar Armstrong, Jr. (NCSB# 9679)
Lamar@ArmstrongLawyers.com
Attorney for Defendant
602 S. Third St., P.O. Box 27
Smithfield, NC 27577
Phone: (919) 934-1575
Fax: (919) 934-1846

## *Certificate of Service*

I */s/ L. Lamar Armstrong, Jr.* certify that on 1 December 2025 I served this motion for protective order by email on plaintiff's attorneys, Thomas Van Camp (thomasv@vancamplaw.com) and Mary Catherine Coltrane (marycatherine@vancamplaw.com).

2

NORTH CAROLINA

MOORE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO: 25CV001930-620

| | |
|---|---|
| *Heather Ammel* <br>    Plaintiff | ) <br> ) <br> ) |
| v. | ) <br> ) |
| *Kyrsten Sinema* <br>    Defendant | ) <br> ) <br> ) <br> ) |

*Motion to Dismiss*

    Pursuant to Rule 12(b)(2) of the North Carolina Rules of Civil Procedure, defendant Krysten Sinema moves to dismiss the complaint for lack of personal jurisdiction on the grounds that defendant does not have sufficient "minimum contacts" with North Carolina such that the defendant could reasonably anticipate being haled into court in North Carolina. North Carolina's exercise of jurisdiction over defendant would violate her due process rights under the Fourteenth Amendment to the United States Constitution.

                THE ARMSTRONG LAW FIRM, P.A.

                BY: */s/ Lamar Armstrong, Jr.*
                L. Lamar Armstrong, Jr. (NCSB# 9679)
                Lamar@ArmstrongLawyers.com
                Attorney for Defendant
                602 S. Third St., P.O. Box 27
                Smithfield, NC 27577
                Phone: (919) 934-1575
                Fax: (919) 934-1846

*Certificate of Service*

    I, */s/ L. Lamar Armstrong, Jr.,* certify that on 1 December 2025 I served this *Motion to Dismiss* on Plaintiff's attorneys, Thomas Van Camp (thomasv@vancamplaw.com) and Mary Catherine Coltrane (marycatherine@vancamplaw.com).

NORTH CAROLINA

MOORE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO: 25CV001930-620

Heather Ammel )
    Plaintiff )
                )
    v. )
                )
Kyrsten Sinema )
    Defendant )
_____ )

*Affidavit of Kyrsten Sinema*

After being placed under oath, I, Kyrsten Sinema, testify based on my personal knowledge that the following facts are true:

1.     I am over eighteen (18) years of age, of sound mind, and otherwise competent to make this affidavit.

2.     I have never lived in North Carolina.

3.     I have never owned or rented any residence property in North Carolina.

4.     I have never been employed in North Carolina.

5.     I have never provided any services to any person or company in North Carolina for which I have received any compensation.

6.     I have never maintained an office in North Carolina.

7.     I have never had or used a mailing address in North Carolina.

8.     I have never owned or leased real property in North Carolina.

9.     I have never owned any motor vehicle registered in North Carolina.

10.     I have never owned personal property located in North Carolina.

11.     I have never maintained a safe deposit box in North Carolina.

12.     I have never owned any other asset in North Carolina.

13. I have never paid property taxes to North Carolina or any municipality or county therein.

14. I have never held a North Carolina driver's license.

15. I have never voted in North Carolina.

16. I have never registered to vote in North Carolina.

17. I have never filed North Carolina state income tax returns.

18. I have never had or used any bank accounts, credit accounts, loans or mortgages originating from a North Carolina financial institution.

19. I have never had any ownership interest in any North Carolina corporation, LLC, partnership, or business venture.

20. I have never filed any litigation in North Carolina.

21. Other than this case, I have never been sued in North Carolina.

22. In no way have I ever done anything to avail myself of the privileges and protections of the laws of North Carolina.

23. I have never consented to jurisdiction in North Carolina by contract or otherwise.

_____
Kyrsten Sinema

I, Sarah Golden , a Notary Public in Maricopa County, State of Arizona , certify that Kyrsten Sinema personally appeared before me. After I placed her under oath, she testified that the facts in this affidavit are true.

Witness my hand and notary seal/stamp, this 20 day of November 2025.

_____
Notary Public

My Commission Expires: Oct. 27, 2028

SARAH GOLDEN
Notary Public - State of Arizona
MARICOPA COUNTY
Commission # 576066
Expires October 27, 2028

<u>*Certificate of Service*</u>

I, */s/ L. Lamar Armstrong, Jr.,* certify that on 1 December 2025 I served this *Affidavit of Kyrsten Sinema* on Plaintiff's attorneys, Thomas Van Camp (thomasv@vancamplaw.com) and Mary Catherine Coltrane (marycatherine@vancamplaw.com).