HEATHER AMMEL,

                                    Plaintiff,

      v.

KYRSTEN SINEMA,

                                  Defendant.

## DEFENDANT'S REPLY BRIEF

Defendant Kyrsten Sinema hereby submits this Reply Brief in response to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction.

## ARGUMENT

### I. Defendant's suit-related conduct did not establish a substantial connection with North Carolina.

The scope of the specific jurisdiction inquiry is narrowly focused, as the only purposeful contacts between Defendant and North Carolina capable of conferring jurisdiction are those contacts giving rise to Plaintiff's claim for alienation of affection. Def. Br. pp. 18-19. Thus, contacts between Defendant and North Carolina unrelated to (1) Defendant's romantic overtures toward Mr. Ammel and/or (2) the destruction of marital love and affection between him and Plaintiff have no bearing whatsoever on the jurisdictional analysis. *Id.* Nor do contacts occurring subsequent to the parties' physical separation. *See* N.C. Gen. Stat. § 52-13(a).

In her brief and declaration, however, Plaintiff focuses heavily on contacts between Defendant and North Carolina that occurred (1) prior to any romantic activity between her and Mr.

Ammel[1] and (2) after Plaintiff and Mr. Ammel had decided to separate. Those contacts, which will be discussed below, fall outside the scope of the narrow jurisdictional inquiry and cannot subject Defendant to this Court's jurisdiction.

Moreover, Plaintiff fails utterly to establish that Defendant's contacts with North Carolina prior to Plaintiff's physical separation from Mr. Ammel were anything more than random and fortuitous. In short, Plaintiff fails to set forth even a *prima facie* case that Defendant's suit-related conduct created a "***substantial connection*** with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis added).

### A. Plaintiff does not dispute the bulk of Defendant's evidence.

Plaintiff's twelve-page declaration does not challenge the key facts established by Mr. Ammel's declaration. She does not dispute that:

(1) due to his extensive work-related travels, Mr. Ammel was physically present in North Carolina only a few days per month during the relevant time period;

(2) Plaintiff insisted as early as October 3, 2024 that Mr. Ammel move into a hotel or apartment;

(3) she texted Mr. Ammel about how to do a structured separation on October 6;

(4) she insisted again that Mr. Ammel move out of the marital residence on October 11;

(5) at her urging, Mr. Ammel toured his future apartment at Tylers Ridge in Southern Pines on October 14;

---

[1] In an effort to move the timeline back as far as possible, Plaintiff "den[ies] the affair occurred as late as May 2024." H. Ammel Decl. ¶ 24. Yet she offers no evidence other than her naked assertion that the romance between Defendant and Mr. Ammel began any earlier than late May 2024. *See* Sinema Decl. ¶ 28.

(6) Mr. Ammel informed Plaintiff on October 14 that he had found an apartment and would be moving out of the marital residence as soon as it was ready;

(7) Plaintiff and Mr. Ammel met with Plaintiff's therapist on October 17 to discuss the fact that they were in the process of separating; and

(8) Mr. Ammel submitted his lease application and security deposit to Tyler's Ridge on October 24 and October 26 respectively.

M. Ammel Decl. ¶¶ 5-8, 12, 14-16, 19, 22, 28. Plaintiff also does not dispute that the sexual relationship between Defendant and Mr. Ammel occurred exclusively outside of North Carolina. Sinema Decl. ¶ 28.

Against this backdrop of now undisputed evidence, Plaintiff contends that: (1) Defendant's Signal message about putting her hand on Mr. Ammel's heart occurred on or about October 3,[2] rather than October 16, 17, or 18; and (2) she and Mr. Ammel were still in a loving, committed relationship when they traveled to Nashville on October 25, as evidenced by them allegedly having sexual intercourse, holding hands, hugging, and him telling Plaintiff that he loved her. H. Ammel Decl. ¶ 27.

Yet the specific date of Defendant's October 2024 Signal message is of no consequence. There is no dispute that as early as October 3, Plaintiff had already instructed Mr. Ammel to live elsewhere—in a hotel or an apartment—signaling that the marriage had already been effectively destroyed. M. Ammel Decl. ¶ 12. As for Plaintiff's contention that their October 25 trip to Nashville proves the continued existence of marital love and affection, Pl. Br. pp. 13-14, that

---

[2] Plaintiff attached to her declaration a photo of her phone displaying this message in an effort to bolster her contention that it was sent "[i]n or around 3 October 2024[.]" D.E. 18, p. 5 & D.E. 18.-1, Ex. A. Yet the only time reference associated with this message was "Yesterday." Plaintiff offers no evidence supporting her contention that Defendant sent this message "[i]n or around 3 October 2024[.]"

contention cannot be squared with the undisputed evidence that (1) by then, Mr. Ammel had already rented a new apartment, M. Ammel Decl. ¶ 22; and (2) he and Plaintiff never spent another evening together, *id.* ¶ 26. Consequently, Defendant's message, "[p]utting my hand on your heart," does not constitute—all by itself as Plaintiff contends, Pl. Br. p. 14—suit-related conduct establishing a substantial connection with North Carolina such that personal jurisdiction over Defendant comports with due process.

      **B.     Plaintiff has not established that Defendant purposely directed her activities at North Carolina.**

As discussed in Defendant's initial brief, Plaintiff must show that Defendant "purposefully established" minimum contacts in North Carolina by "purposefully direct[ing]" her activities at this State. Def. Br. p. 10 (quoting *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016) and *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Minimum contacts exist only "where the defendant 'deliberately' has engaged in significant activities within a State." *Id.* (quoting *Burger King*, 471 U.S. at 475-76).

Plaintiff asks this Court to disregard Defendant's sworn declaration that she did not know where Mr. Ammel was located when she sent the Signal messages at issue. *See* Sinema Decl. ¶ 11. Why? Because "it is not reasonable to believe that." Pl. Br. p. 12. Yet even she agrees—and has sworn under oath—that Mr. Ammel was away from home 90% of the time prior to their separation. D.E. 14-3, p. 6.

Plaintiff implies that Defendant must have known when Mr. Ammel was returning to North Carolina because "***her security group*** … arrange[d] and pa[id] for Mr. Ammel's travel expenses and would fly Mr. Ammel out of Raleigh-Durham International Airport to whatever event Defendant needed Mr. Ammel to attend." Pl. Br. p. 2 (emphasis added). Yet that statement is a gross distortion of the factual record. Defendant was a United States Senator, not at the helm of a

4

security company.  Sinema Decl. ¶ 3.  Her Senate campaign and PAC engaged two security companies to provide the security details on which Mr. Ammel ultimately served; Toa Group and Kinsaker—not Defendant—dispatched Mr. Ammel to Defendant's public events and were responsible for his transportation to and from North Carolina.  *Id.* ¶¶ 4-5; *see also* M. Ammel Decl. ¶¶ 4, 6, 8.

### C.   Defendant's Signal messages Plaintiff claims to have witnessed being delivered in North Carolina do not give rise to a claim for alienation of affection.

Plaintiff recites a litany of Signal messages she claims to have seen delivered in real time while Mr. Ammel was physically present in North Carolina.[3]  According to Plaintiff, the topics raised in those messages were:

(1)   Defendant helping Mr. Ammel with his mental health;

(2)   A photo of Defendant in a towel revealing her bare upper back with cupping bruises and texts about whether she needed more iron in her diet[4];

(3)   Defendant asking why Mr. Ammel felt intimidated by her because she only wanted to intimidate her opponents, not people she liked;

(4)   Defendant suggesting that Mr. Ammel bring MDMA drugs on a work trip so she could guide him through a psychedelic experience;

---

[3] She also contends Defendant's contacts with Mr. Ammel while he was physically present in North Carolina included telephone calls and email communications.  Pl. Br. p. 11.  Yet Plaintiff's declaration is devoid of reference to any such purported telephone calls or email communications.

[4] Plaintiff obviously mentions this photo in an effort to imply something salacious about it.  Yet unlike other messages she attached as exhibits to her brief, this particular photo is conspicuously absent.  In any event, the back-and-forth messages between Defendant and Mr. Ammel surrounding this photo leave little doubt there was nothing salacious—or romantic—about their exchange.

(5)    Defendant stating she was not attending the State of the Union address because she did not need to listen to some old man—President Biden—talk about legislation she wrote.

Pl. Br. pp. 3-4.

None of these messages are within the scope of the narrow jurisdictional inquiry before the Court as none of them could possibly give rise to a claim for alienation of affection. Even if Defendant had known Mr. Ammel was in North Carolina when she sent these messages—and she did not—they do not help Plaintiff establish jurisdiction over her.

Plaintiff also refers to Signal messages Defendant sent to Mr. Ammel while he was in Pennsylvania, including an exchange about "f**k[ing] the hot [troops]" and another message she discovered following Mr. Ammel's return to North Carolina about "having sexual intercourse missionary style with the lights on." Pl. Br. p. 4. It is unclear why Plaintiff focuses on these messages, as they constitute contacts between Defendant and Pennsylvania, not North Carolina.

**D.    Defendant's visits to North Carolina beginning in November 2024 are irrelevant to the jurisdictional inquiry.**

Plaintiff recites additional facts related to Defendant's visits to North Carolina ***after*** Plaintiff and Mr. Ammel separated. Pl. Br. pp. 12-13. She cites *Rodriguez v. Lemus*, 257 N.C. App. 493, 498, 810 S.E.2d 1, 5 (2018) for the proposition that "evidence of post-separation conduct may be used to corroborate evidence of pre-separation conduct and can support claims for alienation of affection and criminal conversation[.]" *Id.* The *Rodriguez* case, however, has nothing to do with personal jurisdiction. The question at issue there was "whether evidence of post-separation acts is admissible to support an inference of pre-separation acts constituting alienation of affection or criminal conversation." *Rodriguez*, 257 N.C. App. at 497, 810 S.E.2d at 4. Simply put, that Defendant arranged visits with Mr. Ammel in North Carolina following his separation

6

from Plaintiff does not in any way diminish her sworn declaration that she had no knowledge of his whereabouts as he traveled the United States and world all but a few days per month prior to his separation.[5]

> **E.**      **Application of the *Calder* "effects test" does not confer jurisdiction over Defendant.**

Plaintiff contends that personal jurisdiction exists in North Carolina under *Calder v. Jones*, 465 U.S. 783 (1984) because Defendant knew or should have known that Plaintiff would suffer injury in North Carolina. Pl. Br. pp. 15-16. She fails to acknowledge, however, that the Supreme Court in *Walden* held that "mere injury to a forum resident is not a sufficient connection to the forum…. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290. As is established above, Plaintiff cannot point to any purposeful, suit-related conduct that connects Defendant to North Carolina in a meaningful way.

Indeed, Plaintiff is asking this Court to assert jurisdiction over Defendant for the very reason the Supreme Court in *Walden* held improper. As Justice Thomas explained for a unanimous Court, "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden*, 571 U.S. at 286 (citation omitted). At bottom, that is precisely why Plaintiff contends Defendant can be haled into this Court:

---

[5] Equally irrelevant are Mr. Ammel's visits to the marital residence following the separation. *See* Pl. Br. p. 14.

In sum, the evidence clearly establishes Defendant, on multiple occasions, initiated contact with Mr. Ammel for the purposes of soliciting his affection. Defendant's contacts were intentional and made with full knowledge that Mr. Ammel was married to Plaintiff. Considering Defendant's contacts in light of these factors, the exercise of jurisdiction over Defendant is proper.

Pl. Br. pp. 20-21 (citation omitted). Rather than establish a substantial connection between Defendant and North Carolina, Plaintiff has instead established a substantial connection between Defendant, Mr. Ammel, and Plaintiff. *Walden* makes clear that those connections are insufficient to confer jurisdiction over Defendant.

**F.      Other considerations do not support the exercise of personal jurisdiction over Defendant.**

North Carolina's interest in adjudicating this dispute—however strong—cannot overcome Plaintiff's failure to demonstrate that Defendant's suit-related conduct established a substantial connection with North Carolina. Jurisdiction exists only if (1) Defendant purposely availed herself of the privileges of conducting activities in North Carolina; (2) Plaintiff's claim arose out of those North Carolina activities; and (3) the exercise of personal jurisdiction is constitutionally reasonable. *Christian Sci. Bd. of Directors v. First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215-16 (4th Cir. 2001) (citations omitted). Because Plaintiff has failed to meet the first two prongs, the factors on constitutional reasonableness she analyzes at great length, Pl. Br. pp. 17-20, are irrelevant to the jurisdictional analysis.

## CONCLUSION

For all of the foregoing reasons, Defendant respectfully requests that this Court dismiss this action because the exercise of personal jurisdiction over her does not comport with due process.

8

Respectfully submitted the 1st day of May, 2026.

**POYNER SPRUILL LLP**

By:    /s/ Steven B. Epstein
Steven B. Epstein
N.C. State Bar No. 17396
sepstein@poynerspruill.com
301 Fayetteville Street, Suite 1900
P.O. Box 1801 (27602-1801)
Raleigh, NC 27601
Telephone: (919) 783-2846
Facsimile: (919) 783-1075

*Attorney for Defendant Kyrsten Sinema*

**CERTIFICATE OF WORD COUNT**

I certify that the foregoing memorandum complies with the word limitation set forth in Local Civil Rule 7.3(d)(1) as reported by the undersigned's word-processing software, which reports a word count of 2254 words, not including the case caption, signature block, or required certificates.

This the 1st day of May 2026.

/s/ Steven B. Epstein
Steven B. Epstein

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this date the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Thomas M. Van Camp
Mary Catherine Coltrane
Van Camp, Meacham & Newman, PLLC
Post Office Box 1389
Pinehurst, NC 28370
thomasv@vancamplaw.com
marycatherine@vancamplaw.com

This the 1st day of May 2026.

/s/ Steven B. Epstein
Steven B. Epstein