| | | |
|---|---|---|
| **HEATHER AMMEL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **PLAINTIFF'S MEMORANDUM OF LAW** |
| | ) | **IN SUPPORT OF PLAINTIFF'S MOTION** |
| **v.** | ) | **TO COMPEL COMPLIANCE WITH** |
| | ) | **DISCOVERY PURSUANT TO** |
| **KYRSTEN SINEMA,** | ) | **FED. R. CIV. P. 37** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

Plaintiff Heather Ammel hereby submits this memorandum of law in support of Plaintiff's Motion to Compel Compliance with Discovery.

## INTRODUCTION

Plaintiff moves this Court to compel Plaintiff's ex-husband Matthew Ammel to testify not subject to the joint defense or common interest rule. Specifically, this Court should compel Mr. Ammel's testimony regarding all conversations with Defendant's counsel under the pretense of the common interest "privilege," as it is impermissible to have a joint defense agreement between a party and non-party witness when there is no common *legal* interest.

## STATEMENT OF THE FACTS

On 7 May 2026, this Court entered an Order allowing the parties to engage in "*limited* discovery and an evidentiary hearing related *solely* to the issue of personal jurisdiction" ("limited jurisdictional discovery Order"). {Dkt. 20}. This Court expressly ordered that, solely as to the issue of personal jurisdiction, each party is entitled to serve five interrogatories, five requests for production of documents, and five requests for admission, and that each side is limited to two depositions. *Id.*

1

On 19 May 2026, this Court expanded jurisdictional discovery to include up to five subpoenas "by each party issued to third parties related to the issue of personal jurisdiction, subject to any Motions to Quash filed by the third parties."  {Pl MTC ¶ 3}.

The parties, through their respective counsels, engaged in several conversations to plan, arrange, and schedule the depositions of Plaintiff, Defendant, and Plaintiff's ex-husband, Matthew Ammel ("Mr. Ammel").  {Pl MTC ¶ 4}.  Plaintiff's counsel and Defendant's counsel coordinated with Mr. Ammel's retained counsel—attorney Brent Tanner—to ensure Mr. Ammel would have representation at his deposition.  {Pl MTC ¶ 5}.  After learning Mr. Ammel currently resides in California, all parties, including Mr. Ammel's counsel, agreed that Plaintiff's counsel would conduct Mr. Ammel's deposition over Zoom on 28 July 2026.  {Pl MTC ¶ 6}.

On 23 June 2026, Plaintiff, by and through her counsel, served Mr. Ammel, by and through his counsel, with Mr. Ammel's Notice of Deposition and Subpoena to Testify at Deposition (Mr. Ammel's "First Notice of Deposition and Subpoena to Testify at Deposition").  {Pl MTC ¶ 7; Ex. C}.  Plaintiff included in Mr. Ammel's First Subpoena to Testify at Deposition a list of documents for Mr. Ammel to produce.  *Id.*

Plaintiff's counsel sent Mr. Ammel's counsel several follow-up emails confirming receipt of Mr. Ammel's First Notice of Deposition and Subpoena to Testify at Deposition.  {Pl MTC ¶ 9}.  On 15 July 2026, Plaintiff's counsel learned Mr. Ammel's counsel had not received a physical copy of Mr. Ammel's First Notice of Deposition and Subpoena to Testify at Deposition.  {Pl MTC ¶ 10}.  That same day, on 15 July 2026, Plaintiff's counsel hand delivered the subpoena to Mr. Ammel's counsel's office, but Mr. Ammel's counsel said he was not authorized to accept service. {Pl MTC ¶ 11}.

On 16 July 2026, Plaintiff, by and through her counsel, issued another Notice of Deposition

and Subpoena to Testify at Deposition (Mr. Ammel's "Second Notice of Deposition and Subpoena to Testify at Deposition"). {Pl MTC ¶ 12; Ex. D}. Plaintiff requested Mr. Ammel produce the same documents listed in Mr. Ammel's First Subpoena to Testify at Deposition. {Pl MTC ¶ 13}. Plaintiff attempted to serve Mr. Ammel with his Second Notice of Deposition and Subpoena to Testify at Deposition at the address Defendant provided for Mr. Ammel in Defendant's initial disclosures. {Pl MTC ¶ 14}. Defendant listed Mr. Ammel's address as: Camp San Luis Obispo, 10 Sonoma Avenue, San Luis Obispo, California 93405. *Id.* Plaintiff attempted service by sheriff, certified mail, and private process server. {Pl MTC ¶ 15}. The private process identified Mr. Ammel's address as a military base. {Pl MTC ¶ 16; Ex. E}. The military base denied the private process server access as Mr. Ammel was considered "unknown" and "not currently on the roster." *Id.*

On 16 July 2026, Plaintiff's counsel conferred with Defendant's counsel about whether Mr. Ammel planned to attend the deposition. {Pl MTC ¶ 17}. Defendant's counsel thereafter conferred with Mr. Ammel's counsel, and on 17 July 2026, Mr. Ammel's counsel confirmed that Mr. Ammel would appear at his deposition. *Id.*

On 28 July 2026, Plaintiff's counsel conducted Mr. Ammel's deposition over Zoom. {Pl MTC ¶ 18}. Mr. Ammel was represented at the deposition by his attorney, Brent Tanner, and Mr. Tanner and Defendant's counsel were both present. *Id.* During Mr. Ammel's deposition, Mr. Ammel testified he did not produce the documents Plaintiff requested as outlined in Mr. Ammel's First and Second Subpoenas to Testify at Deposition. {Pl MTC ¶ 19}.

Plaintiff's counsel also asked Mr. Ammel if he had any conversations with Defendant's counsel prior to his deposition, and Mr. Ammel responded "yes." {Pl MTC ¶ 20}. When Plaintiff's counsel inquired about the substance of those conversations, Defendant's counsel

objected that the information sought was privileged. {Pl MTC ¶ 21}. Plaintiff's counsel then asked Mr. Ammel if he and Defendant had a joint defense agreement, and Mr. Ammel responded "yes." {Pl MTC ¶ 22}.

Throughout Mr. Ammel's deposition, Mr. Ammel's own counsel made no objection as to any question posed. {Pl MTC ¶ 23}. Instead, Defendant's counsel was the only counsel who initiated objections—purportedly on Mr. Ammel's behalf. *Id.* Defendant's counsel asserted several objections based on privilege and asserted a speaking objection in violation of LR 30.1(2) after Plaintiff's counsel asked Mr. Ammel a question concerning Mr. Ammel's flight records to North Carolina during a certain period. {Pl MTC ¶ 24}. Mr. Ammel's testimony significantly differed from his previous testimony he provided in his domestic case and now seemed to directly align with Defendant's declaration. {Pl MTC ¶ 25}. Defendant's counsel instructed Mr. Ammel not to answer any questions concerning conversations with Defendant's counsel. {Pl MTC ¶ 26}.

After Mr. Ammel's deposition concluded, Plaintiff's counsel contacted Mr. Ammel's counsel regarding Mr. Ammel's failure to produce the requested documents as outlined in Mr. Ammel's First and Second Subpoenas to Testify at Deposition. {Pl MTC ¶ 27}. On 31 July 2026, Mr. Ammel produced the documents he claims to have in his possession. *Id.*

Additionally, immediately following Mr. Ammel's deposition, Plaintiff's counsel requested Defendant's counsel to provide a copy of the joint defense agreement. {Pl MTC ¶ 28}. Defendant's counsel responded that Defendant and Mr. Ammel, by and through his counsel, agreed to the release of their joint defense agreement "on the condition that the parties stipulate in the court file that such release does not constitute a waiver of any applicable privilege and cannot be used to argue the existence of a waiver." {Pl MTC ¶ 29; Ex. F}. Plaintiff's counsel asked Defendant's counsel to explain the common legal interest between Defendant and Mr. Ammel, a

4

non-party witness to the case. {Pl MTC ¶ 30}. Defendant's counsel represented that both Defendant and Mr. Ammel had been sued by Plaintiff "regarding legal issues stemming from their relationship" and that there are "numerous overlapping issues between the two cases." {Pl MTC ¶ 31}. Defendant's counsel acknowledged that Defendant and Mr. Ammel "entered into a joint defense agreement in January 2026 in order to coordinate their defenses in the related litigation and be able to communicate freely about those issues—together with their counsel—with the full protection of the common interest, work product, and attorney-client privileges." *Id.*

Plaintiff respectfully disagrees with the contention made by Defendant's counsel and moves this Court to compel Mr. Ammel's testimony regarding his communications with Defendant's counsel. {Pl MTC ¶ 32}. Plaintiff also reserves the right to later bring a motion to compel against Mr. Ammel for deficient document production, if after taking inventory of Mr. Ammel's recently produced documents, Plaintiff determines Mr. Ammel's production is insufficient. {Pl MTC ¶ 33}.

## ARGUMENT

The Federal Rules of Civil Procedure allow parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "For discovery, the scope of relevance is broadly construed to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Glob. Dimensions, LLC v. Tackett*, No. 5:23-CV-00168-FL, 2024 U.S. Dist. LEXIS 22541, at *14 (E.D.N.C. Feb. 7, 2024).

Relevant here, this Court limited the scope of discovery to include information relevant to the issue of personal jurisdiction. {Dkt. 20}. Specifically, this Court expressly ordered that, solely as to the issue of personal jurisdiction, each party is entitled to serve five interrogatories, five

requests for production of documents, and five requests for admission, and that each side is limited to two depositions. *Id.* The Court also allowed each party to serve up to five subpoenas to third parties related to the issue of personal jurisdiction. {Pl MTC ¶ 3}.

On 23 June 2026 and again on 16 July 2026, Plaintiff served Mr. Ammel with a Notice of Deposition and Subpoena to Testify at Deposition. {Pl MTC Ex. C & D}. In Mr. Ammel's First and Second Subpoena to Testify at Deposition, Plaintiff requested Mr. Ammel produce certain documents at his deposition. *Id.* On 28 July 2026, Plaintiff's counsel conducted Mr. Ammel's deposition over Zoom, and Mr. Ammel testified he did not produce the documents Plaintiff requested. {Pl MTC ¶ 19}.

Additionally, during Mr. Ammel's deposition, Mr. Ammel testified he had conversations with Defendant's counsel, but Mr. Ammel would not disclose the substance of those conversations as Defendant's counsel objected based on privilege. {Pl MTC ¶ 20-21}. Mr. Ammel testified he and Defendant had a joint defense agreement. {Pl MTC ¶ 22}.

Rule 37 of the Federal Rules of Civil Procedure allows a party to move for an order compelling discovery when a party or non-party fails to produce or respond to a party's discovery requests without proper objection or privilege. Fed. R. Civ. P. 37. "The party resisting discovery bears the burden of showing why it should not be granted." *Mainstreet Collection, Inc. v. Kirkland's, Inc.,* 270 F.R.D. 238, 241 (E.D.N.C. 2010) (citation omitted). To meet this burden, the non-moving party "must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law." *Id.* (citation omitted).

This Court should compel Mr. Ammel's testimony regarding all conversations with Defendant's counsel under the pretense of the common interest "privilege," as it is impermissible

to have a joint defense agreement between a party and non-party witness when there is no common *legal* interest.  {Pl MTC ¶ 31, 33}.

### I. THE JOINT DEFENSE OR COMMON INTEREST RULE DOES NOT APPLY TO THIS CASE

The joint defense rule, now "more properly identified as the common interest rule" applies to "material covered by attorney-client privilege and work product protection."  *United States v. Duke Energy Corp.*, No. 1:00CV1262, 2012 U.S. Dist. LEXIS 59565, at *45–46 (M.D.N.C. Apr. 30, 2012) (citation omitted).  According to the Fourth Circuit:

> Whether an action is ongoing or contemplated, whether the jointly interested persons are defendants or plaintiffs, and whether the litigation or potential litigation is civil or criminal, the rationale for the joint defense rule remains unchanged: persons who share a *common interest in litigation* should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims.

*In re Grand Jury Subpoenas* 89-3 and 89-4, 902 F.2d 244, 249 (4th Cir. 1990) (emphasis added).

Indeed, litigation is a central component of the common interest rule.  *Id.*  "Courts uniformly hold that, in order for the doctrine to apply, the common interest must be legal in nature." [T]he doctrine does not encompass a joint business strategy which happens to include as one of its elements a concern about litigation."  *Maxtena, Inc. v. Marks*, Civil Action No. DKC 11-0945, 2013 U.S. Dist. LEXIS 42332, at *23 (D. Md. Mar. 26, 2013) (citation modified).

The Fourth Circuit has held "[t]o be entitled to the protection of this privilege[,] the parties must first share a common interest about a *legal* matter.  But it is unnecessary that there be actual litigation in progress for the privilege to apply."  *United States v. Aramony*, 88 F.3d 1369, 1392 (4th Cir. 1996) (emphasis added) (citation omitted) (holding the joint defense rule did not protect a defendant's communications with his employer's attorneys because the defendant and his

7

employer "clearly did not share a common interest about a legal matter" where the allegations concerning the defendant did not subject his employer "to civil or criminal liability")).

In considering the limitation that "it is unnecessary that there be actual litigation in progress for this privilege to apply[,]" this Court explained "[t]he cases where the Fourth Circuit has recognized a common interest privilege, however, have all involved existing or at least pending litigation." *Duke Energy,* No. 1:00CV1262, 2012 U.S. Dist. LEXIS 59565, at *49–50 (citation omitted)). *See In re Grand Jury Subpoenas*, 89-3 & 89-4, 902 F.2d at 249 ("there is no doubt that [the] [m]ovant and [the] [s]ubsidiary were engaged in the joint prosecution of a claim against the Army, as well as in the joint defense of the Army's counterclaim."); *Hanson v. United States Agency for Int'l Dev*., 372 F.3d 286, 292 (4th Cir. 2004) (a federal agency and engineering group were "united by a common interest in resolving [a] construction dispute on favorable terms")). *See also In Re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 341 (4th Cir. 2005) (holding the district court did not err by concluding the joint defense privilege did not apply prior to the time the parties actually shared a common interest and were pursuing a common legal strategy); *FEC v. Christian Coal.,* 178 F.R.D. 61, 73 (E.D. Va. 1998) (holding the common interest rule did not apply where there was "no evidence in the record to show" the third party "was the subject of any actual, contemplated, or prospective litigation" at the time the privileged information was shared, nor did he "receiv[e] any benefit" from the shared information, or was "[e]ffected by the outcome of the litigation")).

Taking into account well established precedent, this Court in *United States v. Duke Energy Corp.,* held the magistrate judge did not err in determining the defendant failed to meet its burden of showing that the common interest rule applied, because the defendant failed to demonstrate "a common legal interest relating to ongoing or contemplated litigation." *Duke Energy,* No.

8

1:00CV1262, 2012 U.S. Dist. LEXIS 59565, at \*55–56.  There, the defendant Duke Energy entered into a joint defense agreement with Utility Air Regulatory Group ("UARG"), a non-party to the underlying action, and the plaintiff moved to compel the defendant to produce to produce documents and communications with the UARG.  *Id.* at 3.  In response, the defendant "filed a cross motion for a protective order, arguing that the requested information was irrelevant, protected by attorney-client privilege and work product protection, and covered by the joint defense/common interest rule."  *Id.*  This Court, in upholding the decision of the magistrate, explained the defendant "failed to establish that the documents in question were created in anticipation of litigation[,]" and the "affidavits submitted by the defendant failed to identify any specific litigation at issue."  *Id.* at 56.  According to the magistrate, "'contemplated litigation" meant a 'palpable threat of litigation,' which he interpreted as 'at least as stringent as the anticipation of litigation standard used for work product.'"  *Id.* (citation omitted).

Here, like the facts in *Duke Energy*, the asserted joint-defense agreement is between a party and non-party witness to the case, and there is no common *legal* interest.  Defendant cannot show how the underlying action will subject Mr. Ammel to any civil or criminal liability, or that the conversations between Defendant, Defendant's counsel, and Mr. Ammel were had in anticipation of litigation.  {Pl MTC ¶ 34-35}.

Defendant's contention that Plaintiff has sued both parties in separate actions, and both actions involve "legal issues stemming from [Defendant and Mr. Ammel's] relationship" is simply incorrect.  The only claim in Plaintiff's domestic action against Mr. Ammel that would raise implications of illicit sexual misconduct during the marriage is Plaintiff's alimony claim[1], and

---

[1] "Marital misconduct may be a factor considered by the trial court in determining **alimony**, *see* N.C. Gen. Stat. § 50-16.3A(b)(1), but '[i]f the court finds that the supporting spouse participated in an act of **illicit** sexual behavior, as defined in G.S. 50-16.1A(3)a., during the marriage and prior to or on the date of separation, then the court *shall* order

Plaintiff's alimony claim against Mr. Ammel was resolved in August 2025. {Pl MTC ¶ 36-37}. Plaintiff dismissed her alimony claim against Mr. Ammel with prejudice in August 2025, a month prior to Plaintiff commencing the underlying alienation of affection action against Defendant. *Id.* To the extent Plaintiff recently commenced a breach of contract action against Mr. Ammel for his failure to pay alimony has nothing to do with the merits of Plaintiff's original alimony claim, and because Plaintiff dismissed her alimony claim with prejudice in August 2025, Plaintiff is prohibited from bring an alimony claim against Mr. Ammel again. *See Riviere v. Riviere*, 134 N.C. App. 302, 306, 517 S.E.2d 673, 676 (1999) (holding that where the defendant "voluntarily dismissed with prejudice her claim for permanent alimony based on adultery and abandonment, she conceded that none of the grounds entitling her to permanent alimony pursuant to section 50-16.2 existed" because "it is well settled in this state that a voluntary dismissal with prejudice is a final judgment on the merits" (citation omitted)).

Additionally, based on Defendant's representations, Defendant and Mr. Ammel entered into the joint defense agreement in January 2026, approximately five months after Plaintiff dismissed her alimony claim with prejudice. {Pl MTC ¶ 31-37}. Thus, Plaintiff's allegations concerning Defendant in the alienation of affection action cannot currently, nor at the time Defendant and Mr. Ammel entered into the joint defense agreement, subject Mr. Ammel to civil or criminal liability as Plaintiff's alimony claim against Mr. Ammel has been resolved and dismissed. . . well before the entry of any joint defense agreement. *Id.*

---

that **alimony** be paid to [the] dependent spouse.'" *Klein v. Klein*, 290 N.C. App. 570, 604–05, 892 S.E.2d 894, 919 (2023) (quoting N.C. Gen. Stat. § 50-16.3A(a) (emphasis added)). "**Illicit** sexual behavior is distinguished from other forms of marital misconduct as it mandates an award of **alimony** to a dependent spouse, whereas other forms of marital misconduct may simply be considered as a factor, in the trial court's discretion, in determining **alimony**. *Id.* (citing *Romulus v. Romulus*, 215 N.C. App. 495, 521–22, 715 S.E.2d 308, 325 (2011)); "[W]e hold that marital fault or misconduct of the parties which is not related to the economic condition of the marriage is not germane to a division of marital property under 50-20(c) and should not be considered." *Smith v. Smith*, 314 N.C. 80, 87, 331 S.E.2d 682, 687 (1985) (citations omitted)).

Furthermore, like the facts in *In Re Grand Jury Subpoena*, where the Fourth Circuit held the joint-defense privilege did not apply to events prior to the time the parties actually shared a common interest and were pursuing a common legal strategy, *In Re Grand Jury Subpoena*, 415 F.3d at 341, the same principle applies here. *Id.* If no common legal interest existed between Defendant and Mr. Ammel at the time they entered into the joint defense agreement, because any common interest had been since resolved, then such conversations cannot be protected by the joint-defense privilege. *Id.* Similar to the facts in *FEC,* Defendant can point to "no evidence in the record to show" that Mr. Ammel is the subject of any "actual, contemplated, or prospective litigation" concerning the underlying action, nor can she show that from January 2026 to present— the time period Defendant is asserting the joint interest privilege—that Mr. Ammel "received any benefit" from the shared information or will be "affected by the outcome of the litigation." *FEC*, 178 F.R.D. at 73. There is no question that the underlying action cannot subject Mr. Ammel to any civil or criminal liability or that he will somehow be affected by the outcome of the litigation. {Pl MTC ¶ 31-37}.

Because there is no common *legal* interest between Defendant and Mr. Ammel, the joint defense or common interest rule does not apply. This Court should compel Mr. Ammel's testimony regarding his conversations with Defendant's counsel.

## CONCLUSION

For all the reasons discussed above, this Court should compel Mr. Ammel's testimony regarding all conversations with Defendant's counsel under the pretense of the common interest "privilege," as it is impermissible to have a joint defense agreement between a party and non-party witness who have no common *legal* interest.

11

This, the 3rd day of August 2026.

**VAN CAMP, MEACHAM & NEWMAN, PLLC**
*Attorneys for Plaintiff*

By:   */s/ Thomas M. Van Camp*
Thomas M. Van Camp, N.C. State Bar No. 16872
Mary Catherine Coltrane, N.C. State Bar No. 60820
Post Office Box 1389
Pinehurst, North Carolina 28370
Telephone: (910) 295-2525
Facsimile:  (910) 295-5101
thomasv@vancamplaw.com
marycatherine@vancamplaw.com

12

**CERTIFICATE OF WORD COUNT LIMIT**

I certify that this **PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL COMPLIANCE WITH DISCOVERY PURSUANT TO FED. R. CIV. P. 37** complies with the page limit set forth in Local Civil Rule 7.3(d) and does not exceed the maximum allotted word count of 6,250 words. This Brief contains 3,442 words.

This, the 3rd day of August 2026.

**VAN CAMP, MEACHAM & NEWMAN, PLLC**
*Attorneys for Plaintiff*

By:   */s/ Thomas M. Van Camp*
Thomas M. Van Camp, N.C. State Bar No. 16872
Mary Catherine Coltrane, N.C. State Bar No. 60820
Post Office Box 1389
Pinehurst, North Carolina 28370
Telephone: (910) 295-2525
Facsimile:  (910) 295-5101
thomasv@vancamplaw.com

13

<u>**CERTIFICATE OF SERVICE**</u>

THIS IS TO CERTIFY that the undersigned has this date served the foregoing **PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL COMPLIANCE WITH DISCOVERY PURSUANT TO FED. R. CIV. P. 37** upon the persons listed below via email addressed as follows:

       Steven B. Epstein, Esq.
       *Attorney for Defendant Kyrsten Sinema*
       301 Fayetteville Street
       Suite 1900
       Post Office Box 1801 (27602-1801)
       Raleigh, North Carolina 27601
       Telephone: (919) 783-2846
       Facsimile:  (919) 783-1075
       sepstein@poynerspruill.com

This, the 3rd day of August 2026.

       VAN CAMP, MEACHAM & NEWMAN, PLLC
       *Attorneys for Plaintiff*

       By:*/s/ Thomas M. Van Camp*
       Thomas M. Van Camp, N.C. State Bar No. 16872
       Mary Catherine Coltrane, N.C. State Bar No. 60820
       Post Office Box 1389
       Pinehurst, North Carolina 28370
       Telephone: (910) 295-2525
       Facsimile:  (910) 295-5101
       thomasv@vancamplaw.com
       marycatherine@vancamplaw.com

14